**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**AMBER J.M,[1]**

          Plaintiff,                        Civ. No. 6:19-cv-0833-AA

    v.                               **OPINION & ORDER**

**COMMISSIONER OF SOCIAL
SECURITY**,

          Defendant.

_____

AIKEN, District Judge:

    Plaintiff Amber J.M. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. The decision of the Commissioner is REVERSED and REMANDED for award of benefits.

## BACKGROUND

    On January 18, 2017, Plaintiff filed a Title II application for disability insurance benefits alleging disability beginning on October 1, 2015. Tr. 205. The application was denied initially and upon reconsideration and, at Plaintiff's request, an Administrative Law Judge ("ALJ") held a hearing on October 11, 2018. Tr. 126, 131. On January 30, 2019, the ALJ issued a decision finding Plaintiff not disabled. Tr. 15-24. On April 10, 2019, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves

that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date ("AOD") of October 1, 2015. Tr. 17.

At step two, the ALJ found that Plaintiff had the following medically determinable impairments: residuals of bullet wounds to left upper extremity, abdomen, and hip; posttraumatic stress disorder ("PTSD"); depression; and anxiety (20 CFR 404.1520(c)). Tr. 17. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 18.

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform "light work as defined in 20 CFR 404.1567(b) except the claimant is limited to occasional overhead reaching and frequent feeling with the left upper extremity. She can never climb ladders, ropes, or scaffolds, and never crawl." Tr. 19. Further, "the claimant must avoid all exposure to hazards (i.e. dangerous machinery unprotected heights, etc.) … [but] is capable of occasional interaction with the public, coworkers, and supervisors, and needs a static work environment with few changes in work routines and settings." *Id.*

At step four, the ALJ determined that Plaintiff has past relevant work as a nurse assistant. Tr. 23. Due to Plaintiff's designated RFC limitations, the ALJ

determined that she would be unable to perform past work as actually or generally performed. *Id.* The ALJ found at step five that Plaintiff could perform jobs that exist in significant numbers in the national economy, specifically that Plaintiff could perform work as a marker, assembler, or hand packager. Tr. 24. Therefore, the ALJ determined that Plaintiff was not disabled. *Id.*

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, the Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful

normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff asserts the ALJ erred by improperly (1) discounting Plaintiff's subjective symptom testimony; (2) weighing the medical opinion evidence; (3) discounting "other" medical source evidence; and (4) discounting lay witness statements.

## I.    Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by discounting her subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Id.*

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal

quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id.* The ALJ may also rely on "other evidence" factors such as activities of daily living, claimant's reported descriptions of symptoms, and their treatment history in assessing a Plaintiff's testimony. *See* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

### A.    *Plaintiff's Testimony*

Plaintiff testified about her lingering physical and mental injuries as a victim of the mass shooting at Umpqua Community College near Roseburg, Oregon in 2015. Tr. 37. The shooter fired at Plaintiff eight times, discharging ten bullets into her body. Plaintiff survived two exit wounds and five shots through her left arm. Bullets hit Plaintiff through her chest, her left lung, her abdomen, and her left hip. Tr. 38-39, 97-98, 334, 343, 346, 362, 367, 375. After years of extensive surgery, Plaintiff still has bullet fragments lodged in her left shoulder. Tr. 381, 453, 455-469.

Plaintiff testified that she suffers a range of physical limitations from the wounds the shooter inflicted that affect her ability to reach, grab, and lift. Tr. 42, 74, 288. Plaintiff stated she is not able to lift a gallon of milk with her left arm. Tr. 948. Plaintiff explained that surgery and physical therapy has alleviated some

pain, allowing Plaintiff to drive and lift objects up to five pounds.  *Id.*  She has chronic nerve pain and increased pain and numbness when active.  Tr. 41-42.

Though Plaintiff endured severe injuries from the shooting, she attests that her disability is "more mental than physical."  Tr. 58.  Plaintiff explained that she suffers from PTSD, anxiety, hypervigilance, recurring nightmares, paralyzing agoraphobia, and struggles with survivor's guilt.  Tr. 72, 475, 489, 711, 897, 898, 901.  The trauma she suffered as a mass-shooting victim continues to cause poor sleep, exhaustion, and trouble concentrating.  Tr. 488.

Plaintiff enrolled in therapy after the shooting, briefly discontinuing it in January 2016.  Tr. 398.  Plaintiff resumed therapy in May 2016 and has received consistent treatment from Lee VanBeuzekom, LMFT, since May 2016.  Tr. 471-79, 799.  She uses a service dog for emotional support.  Tr. 73.  After the shooting, Plaintiff's physicians prescribed the following medications: Gabapentin, Buspar, Percocet, Venlafaxine/Effexor, Celexa, Benadryl, Xanax, Alprazolam, Hydroxyzine, Tramadol, and Wellbutrin.  Tr. 43, 59, 65, 407, 416, 422, 433, 441, 446, 451, 453, 459, 461, 465, 701, 716.

The record includes Plaintiff's statements and hearing testimony about the impact the shooting had on her daily activities.  Due to financial constraints, Plaintiff lives with her husband, though they are separated.  Tr. 54, 55.  Their two children, who are 9 and 10 years old, live with them.  Tr. 51.  In a typical day, Plaintiff can drive her children to school but afterward must isolate for about a half an hour and do nothing.  Tr. 289.  Plaintiff sometimes drives her children to their

afterschool activities, but waits in the car to avoid the crowds. Tr. 53. She experiences lost "gaps of time." Tr. 289.

Occasionally, Plaintiff has socialized in small groups of close friends, with her family, or when required by previous employers. Tr. 48. She stated that it took time after the shooting, but she was eventually able to prepare simple meals and perform light cleaning with lots of resting. Tr. 291, 719. She benefits when someone is with her for support when going out in public, but even then, she remains anxious, nervous, and hypervigilant. Tr. 496, 489, 757, 749, 748. Since the shooting, she experiences poor sleep, exhaustion, and trouble concentrating. Tr. 488. She must engage in "self-talk" when she is out in public, especially when she is alone, reminding herself that she is safe. Tr. 291.

For a short period, Plaintiff's activities included part-time work. Plaintiff stated that in 2018, when she faced financial strain, she worked part-time as a pre-school classroom assistant. Tr. 21, 46, 224, 851, 852, 926, 928. The job required no special training. Her duties included preparing simple meals and clean-up. *Id.* However, Plaintiff testified that working was mentally and emotionally unsustainable and that she spent her evenings recovering from the stress. Tr. 57, 928. Plaintiff sometimes left work early and missed days of work. Tr. 49, 55. Plaintiff stopped working after six months. Tr. 224.

### B.    *ALJ Decision*

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's]

statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 20.

The ALJ cited as the basis for rejecting Plaintiff's testimony that it was "not fully consistent with the record that shows significant medical improvement in her left shoulder and arm, no significant limits in the hip, and decreased and/or stable symptoms of PTSD, anxiety, and depression, plus an ability to perform a robust slate of daily activities, including working 26 hours a week." Tr. 22.

### 1.    Daily Activities

The ALJ determined that Plaintiff's reported activities showed she "was able to function in public" and could therefore work in a "static work environment as per the RFC." Tr. 21.  The ALJ based that on Plaintiff's ability to "ready her children for school, work part-time, prepare meals, keep track and attend her appointments, manage her personal hygiene, and enjoy family activities including hiking, going to the coast, doing arts and crafts and watching movies." Tr. 21.  The ALJ found that Plaintiff's "return[ ] to school" and "working 26 hours a week" were activities inconsistent with her subjective symptom testimony.  Tr. 20, 22.

An ALJ may reject a plaintiff's testimony by demonstrating their activities of daily living correspond to "transferrable work skills."  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).  "Transferrable work skills" include tasks such fully managing a household, attending school full-time, or homeschooling one's children.  *DeLeon v. Saul*, 812 F. App'x 529, 530 (9th Cir. 2020).  Basic household chores and "reading,

watching television, and coloring in coloring books" are not considered work transferrable skills. *Id.* at 628. The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons, and is not held to a minimum standard of performance, as she would be by an employer. *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (citations omitted). An ALJ improperly discredits symptom testimony when a Plaintiff attempts to work but is unable to perform as required. *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 694 (9th Cir. 1999).

Evidence in the record is that most of Plaintiff's home-based activities involved assistance from her husband. Tr. 268, 928. The record shows that when Plaintiff engaged in family activities she confined herself inside the car while her husband and children participated outside. Tr. 327, 899, 909, 928. Plaintiff's trips with her family to visit the Oregon Coast are not activities generally considered to have transferability to a work setting, nor did those activities involve large gatherings of people. And, Plaintiff still reported mental health difficulties and pain during those outings. Tr. 97, 465, 554, 928.

Further, Plaintiff described her social activities as limited and frequently resulting in a mental health crisis and panic attack. Tr. 43, 266, 272, 317, 630. Rather than a full-time return to school, evidence is that Plaintiff attended two online classes during one semester, and later, Plaintiff attempted attending in-person a math and bowling class. Tr. 65. Plaintiff explained that her attempt to

return to school resulted in a mental health crisis and that she has not gone back. Tr. 97, 98, 109, 127. Plaintiff's short stint working 26 hours a week at a daycare— an activity that the ALJ did not find to be substantial gainful employment—was anything but indicative of a "robust slate of daily activities," where the ALJ noted Plaintiff's report that the simple tasks she was assigned caused Plaintiff stress that left her exhausted and at the end of each day, ultimately rendering the job unsustainable, even with the impetus of Plaintiff's emergent financial need for work.

Thus, the record as a whole does not support the ALJ's determination that Plaintiff's daily activities undermine her testimony about her symptoms.

### 2.    Mental Health

The ALJ cited "decreased and/or stable symptoms of PTSD, anxiety, and depression" as a basis for discrediting Plaintiff's subjective symptom testimony, finding that Plaintiff had a "moderate limitation" with her "ongoing symptoms of PTSD and social anxiety." Tr. 18. The ALJ also cited Plaintiff's initial reports to her physician in 2016 that her anxiety symptoms improved after she learned coping strategies. Tr. 20. The ALJ also reasoned that Plaintiff's "activity level alone indicates she was able to function in public" because she had worked at the daycare, attended church, or otherwise "went into the public realm." Tr. 18, 21.

"It is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an

ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working. *Garrison,* 759 F.3d at 1017.  "That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir.2001)

Evidence in the record is that Plaintiff's treating physicians noted improvement in Plaintiff's mood and that Plaintiff attempted to resume other normal activities.  However, the record also shows that when going "into the public realm" Plaintiff continues to feel anxious, nervous, and hypervigilant.  Tr. 496.  She experiences poor sleep, exhaustion, and trouble concentrating.  Tr. 488.  Plaintiff still benefits from a support person accompanying her to stores and only attends small events.  Tr. 757, 749, 748.  Large events exacerbate Plaintiff's anxiety and PTSD.  Tr. 488, 606.

Following initial improvement, the record shows that Plaintiff's depression worsened.  Tr. 712.  Physicians attempted treating Plaintiff with various medications: some helped, others increased her agitation.  Tr. 701, 702, 710.  Two years after the shooting, Plaintiff's mental symptoms persisted and her depression got worse, requiring increased medication.  Tr. 811, 806, 922.  She described having a startle response at work, where she disassociated and her body jerked in response to loud sounds.  Tr. 901.  By summer 2018, her therapist, VanBeuzekom, noted that Plaintiff had improved some over two years since the shooting, stating that Plaintiff

was forcing herself to go out in public and to interact with others and knew when she needed to take breaks. Tr. 942. Yet, VanBeuzekom assessed, "I believe the client has made all of the gains she's going to make toward normalizing her situation and reducing her PTSD symptoms. She is functional to some degree and pushes herself quite hard to do things that are anxiety provoking to her. I believe she still has too many symptoms to be working." Tr. 939.

On this record, the Court concludes that the ALJ failed to give clear and convincing reasons supported by substantial evidence in the record for discounting Plaintiff's subjective symptom testimony about her mental health. Plaintiff's daily activities, as she described them in her testimony, were consistent with her statements about the impairments caused by depression, anxiety, and PTSD. Reports of "improvement" in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of the patient's symptoms and must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace.

### 3.    Physical Function

The ALJ found that medical records showed post-operative progress in Plaintiff's left arm, demonstrating "reduced pain, decreased numbness and tingling, and increased strength and range of motion." Tr. 20. The ALJ pointed to a "non-displaced fracture . . . that was not healing," and that Plaintiff had reported

"worsening pain" to her physician when using a recommended bone stimulate for treatment. Tr. 20. The ALJ cited Plaintiff's report to her physician in 2017 that her overall function was good and that she could complete her daily activities without difficulty. Tr. 21. The ALJ stated that, though Plaintiff occasionally experienced "shooting pain" and decreased sensation in the left hand, a physical exam at one point found Plaintiff "nontender to palpitation about the shoulder and [elbow]," and that she had "full overhead range of motion." Tr. 21. The ALJ pointed to evidence that Plaintiff engaged in resistance band training to strengthen her left arm, and that a physician had advised plaintiff to upgrade to a heavier resistance band in her training. Tr. 21. The ALJ determined that the RFC "already limits overhead reaching" thus there was not a need for further functional limitations. Tr. 21-22. Plaintiff reported that she could still not lift a gallon of milk, but the ALJ specifically determined that her report "was not objectively verified." Tr. 22.

Plaintiff argues that the ALJ disregarded evidence of ongoing limitations during the relevant period. Specifically, while the ALJ pointed to evidence that Plaintiff reported herself capable of performing daily activities without difficulty, and good overall function as of January 2017, she continued to struggle to lift more than a gallon of milk with the left arm as of August 2018. Tr. 716, 948.

In rejecting Plaintiff's subjective symptom testimony about the severity of her symptoms, the ALJ recognized objective medical evidence of impairment to Plaintiff's left limb—an unhealed fracture, reports of shooting pain, bullet fragments, etc.—evidence that "could reasonably be expected" to produce the degree

of symptoms Plaintiff claimed to experience, namely, difficulty lifting items such as a gallon of milk. *See Smolen*, 80 F.3d 1273, 1282 (9th Cir. 1996) (stating evidentiary standard). In rejecting Plaintiff's testimony and reports to her physicians that she could not lift an a gallon of milk, the ALJ cited to a lack of objective evidence to support Plaintiff's claim.

The Court recognizes that the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews*, 53 F.3d at 1039. However, the ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir.1990). Once the claimant produces medical evidence of an underlying impairment, an ALJ may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The Court finds erroneous the ALJ's determination that there was a "lack of objective verification" of whether Plaintiff's impairment could cause pain capable of limiting her ability to lift a gallon of milk.

In all, the ALJ erred in failing to identify specific, clear and convincing reasons supported by substantial evidence in the record to reject Plaintiff's subjective symptom testimony, and that evidence should be fully credited as true

## II.    Medical and "Other" Opinion Testimony

Plaintiff alleges the ALJ failed to identify a legally sufficient basis to reject the examining medical opinion of Dr. Teresa Dobles. When evaluating the intensity and persistence of a plaintiff's symptoms, the ALJ "consider[s] all of the available

evidence from medical sources and nonmedical sources about how [the] symptoms affect [the plaintiff]." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). Under the "old rules" relevant here, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222 (9th Cir. 2010) (internal quotation marks and citation omitted). An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.* An ALJ may reject "the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

## A. *Dr. Teresa Dobles*

Dobles examined Plaintiff in 2018. Tr. 925. Dobles submitted an eight-page, typed, single-spaced, psychological evaluation of Plaintiff. Tr. 925-932. Dobles reviewed available medical records, administered a clinical interview, and conducted several psychometric tests, including the Wechsler Adult Intelligence Test–Fourth Edition ("WAIS-IV"), Trails A and B, Personality Assessment Inventory ("PAI"), and Beck Depression Inventory. Tr. 925, 928.

Dobles noted that Plaintiff's "extreme vulnerability to triggers reminding her of the traumatic event" were evident during the evaluation. Tr. 927-28. Plaintiff

cried readily when she discussed difficult situations in her life. Tr. 928. She needed repetition of some subtest directions and became frustrated and tearful when she could not perform items on certain tests. Tr. 929. Plaintiff's ability to sustain attention, concentration, and exert mental control ranged from mildly impaired to low average. Tr. 930. Her ability to process simple or routine visual material without making errors was highly variable, ranging from moderately impaired to high average. Tr. 930.

Dobles opined that Plaintiff uses maladaptive behavior patterns to control her anxiety, such as withdrawing from activities. Tr. 930. Dobles noted that, at times, Plaintiff's thought processes were marked by confusion, distractibility, and impaired concentration. Tr. 930.

Dobles assessed Plaintiff's cognitive functioning. The Beck Depression Inventory indicated moderate depression. Tr. 931. Dobles determined that Plaintiff's variability in functioning may be due to several factors, including a depression, anxiety, and medication side effects. Tr. 931. Dobles also diagnosed PTSD and persistent depressive disorder. Tr. 932. Dobles opined that Plaintiff's variability in functioning was likely to "interfere in her life in significant ways." Tr. 932. Dobles specifically assessed mild impairment in Plaintiff's ability to understand, remember, and carry out simple instructions; moderate impairment in Plaintiff's ability to interact appropriate with the public, supervisors, and coworkers; and marked impairment in Plaintiff's ability to make judgments on

simple or complex work-related decisions and respond appropriately to work situations and changes in a routine work setting.  Tr. 932-33.

The ALJ gave "little weight" to Dobles' opinion "that [Plaintiff] experiences 'variability in her functioning' due to ongoing symptoms of PTSD."  Tr. 22.  To support that determination, the ALJ stated that Dobles' opinion was "vague" and "lacking a function-by-function assessment" of what Plaintiff "can actually do."  Tr. 22.  The ALJ again cited Plaintiff's daily activities as a basis for rejecting Dobles' opinion, stating that the opinion was "belied" by Plaintiff's "activity level."

The ALJ failed to provide a legally substantial basis explaining how Dobles' opinion is vague.  The opinion is thorough; detailed.  Further, the opinion provides functional assessments in at least three identifiable categories, specifically noting Plaintiff's mild, moderate, and marked impairments in terms of her ability to concentrate, interact with others, and respond to work and social situations.

The ALJ also failed to explain how Plaintiff's daily activities negated Dobles' opinion that Plaintiff would have the functional impairments Dobles' described.  As discussed above in Section I, the record is replete with examples of Plaintiff's anxiety and PTSD limiting Plaintiff's daily activities.

On this record, the Court concludes that, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence in the record to discount Dobles' opinion.  The Court further concludes that this error was harmful and Dobles' opinion should be fully credited as true.

### B.    *Lee VanBeuzekom, LMFT*

"In addition to considering the medical opinions of doctors, an ALJ must consider the opinions of medical providers who are not within the definition of 'acceptable medical sources.'" *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017); 20 C.F.R. § 404.1527(f).   While not entitled to the same deference as "acceptable" medical sources, statements from "other" medical sources relevant to a claimant's symptoms or how an impairment affects her ability to work is competent evidence that cannot be disregarded without comment. *Tobeler v. Colvin*, 749 F.3d 830, 833-34 (9th Cir. 2014).   The ALJ may reject the opinion of an "other source" by giving "reasons germane to each witness for doing so." *Turner,* 613 F.3d at 1223-24.   A "germane reason" is one which an ALJ may discount an opinion that lacks sufficient explanation or is based off an inadequate amount of interaction with the plaintiff. 20 C.F.R. §§ 404.1527(c)(3), 20 C.F.R. §§ 404.1527(c)(i), 416.927(c)(3), 416.927(c)(i).

VanBeuzekom has provided regular therapy to Plaintiff since May 2016.  Tr. 831.  VanBeuzekom noted the same symptoms as Plaintiff's other providers: PTSD, anxiety, fear, hypervigilance, and psychological distress triggered by internal and external cues resembling her traumatic event.  Tr. 831-32.  VanBeuzekom opined that Plaintiff's symptoms would interfere with her ability to sustain full-time work. VanBeuzekom assessed moderate impairment in Plaintiff's ability to understand, remember, and carry out simple instructions; make judgments on either simple or complex work-related decisions; and interact appropriately with the public, supervisors, and coworkers.  Tr. 834.   She assessed marked impairment in

Plaintiff's ability to understand, remember, and carry out complex instructions and to respond appropriately to changes in a routine work setting.  Tr. 834.

The ALJ explained that "the opinion of Lee VanBeuzekom is given limited weight," reasoning that the opinion is inconsistent with Plaintiff's ability to work part-time for six months, as well as to "engag[e] in regular social activities outside her home with friends and family, indicating an ability to engage in unpredictable social situations without debilitating effects from her PTSD symptoms." Tr. 22.

For the reasons addressed in Section I, the ALJ's reasoning is not supported by the record, which documents ongoing, severe, and persistent PTSD that continues to impact Plaintiff's ability to sustain in a full-time, competitive work setting.  The ALJ therefore erred in rejecting VanBeuzekom's opinion.  That improperly rejected evidence should be credited as true.  *See Schneider*, 223 F.3d at 976.  When properly credited, VanBeuzekom's statements support a finding that Plaintiff is not capable of sustaining performance within the customary tolerances of competitive work.  Tr. 85-87.

### III.    Lay Witness Testimony

Like "other" medical source opinions, lay witnesses statements are generally "competent evidence that the ALJ must take into account" and may discount only with germane reasons supported by substantial evidence in the record.  *Molina*, 674 F.3d at 1114; *Turner*, 613 F.3d at 1224.

Plaintiff's husband, sister, close friends, and other community members provided highly compelling and detailed statements.  Tr. 326-328.  As lay witnesses,

their reports elaborated on Plaintiff's demeanor before—as a confident and outgoing person—and after she was shot, citing specific events providing persuasive insight into the persistent and significant physical and mental health deterioration Plaintiff experienced. *Id.*

In total, the ALJ's assessment of the lay witness statements was that the testimony was "inconsistent with the longitudinal medical evidence of record showing medical improvement" and therefore given "limited weight." Tr. 23.

An ALJ is permitted to discount lay witness testimony for a variety of reasons. An ALJ may discount lay witness evidence if inconsistent with the medical evidence. *Bayliss*, 427 at 1218. When lay witness testimony merely regurgitates the Plaintiff's discredited testimony, that is sufficient reasoning to discount lay testimony. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). Further, "if the ALJ gives reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114 (*citing Valentine*, 574 F.3d at 694).

Here, however, the record does not support the ALJ's reasons for discounting the testimony of Plaintiff's husband, sister, and friends. The ALJ therefore erred in rejecting the lay witness reports, and that improperly rejected evidence should be fully credited as true. *See Schneider*, 223 F.3d at 976. When properly credited, each lay witness statement demonstrates the severity and persistence of Plaintiff's impairments.

## IV.   Remedy

The ALJ's decision contained harmful error, necessitating remand. The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Triechler v. Comm'r*, 775 F.3d 1090, 1101-02 (9th Cir. 2014). A remand for award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. *Id.* at 1100-01 (internal quotation marks and citations omitted). The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1178 n.7 (9th Cir. 2000).

Here, the Court determines that the ALJ erred by discounting Plaintiff's subjective symptom testimony; assigning "little weight" to Dobles' medical opinion and VanZeubekom's assessment; and discrediting the testimony of lay witnesses. The Commissioner does not identify, and the Court has not found, any outstanding issues that must be resolved. The Court concludes that the record is complete and that no purpose would be served by a remand for further proceedings. Crediting the improperly discounted opinions and reviewing the record as a whole, the Court is satisfied that Plaintiff is disabled and that a remand for award of benefits is warranted in this case.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is REVERSED and REMANDED for calculation and award of benefits. Final judgment shall be entered accordingly.

It is so ORDERED and DATED this ____18th____ day of May 2023.


 /s/Ann Aiken                           
ANN AIKEN
United States District Judge